UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
THOMAS CORCORAN III,  ALFRED  & KERSTIN
D. VOTTA, on behalf of their minor sons R.V. and
J.V., DYLAN WEST, DOMINIC SANTORA,
JIMMY FARRETT,

                    Plaintiffs,

                                                          **COMPLAINT**

                                                          1:13-CV-1488 (TJM/TWD)

vs.

RICHARD WARD, RAY CASTELLANI, and
MARLBORO CENTRAL SCHOOL DISTRICT,

                    Defendants.
-----------------------------------------------------------x

   By and through their attorneys, Sussman & Watkins, plaintiffs hereby allege

as against defendants:

   I. **PARTIES**

1.  Plaintiff Thomas Corcoran III is a resident of the Town of Marlboro and of

legal age.  He graduated Marlboro High School in June 2013.

2.  Plaintiffs Alfred & Kerstin Votta are the parents of R.V. and J.V.,

student/athletes under the age of eighteen who currently attend the defendant

Marlboro Central School District.  Plaintiffs bring this lawsuit on behalf of their

children.

3.  Plaintiff Dylan West is a resident of Milton, New York, within this judicial

district and of legal age.  He graduated from Marlboro High School in June 2013.

4.  Plaintiff Dominic Santora is a resident of Marlboro, New York, is of legal age and graduated from Marlboro High School in June 2013.  Plaintiff Santora was on the football team, coached by defendant Ward, his senior year, the fall of 2012.

5.  Plaintiff Jimmy Farrett resides in Marlboro, New York within this judicial district and is of legal age.  He will graduate from Marlboro High School in June 2014.

6.  Defendant Richard Ward is the head football coach, employed on a year-to-year basis and at-will by the Marlboro Central School District.

7.  Defendant Ward works in this judicial district and has no entitlement to his position of football coach.

8.  Defendant Ray Castellani is the Superintendent of Schools of the Marlboro Central School District and has supervisory responsibility for the football coach. He works in this judicial district.

9.  The actions and omissions of defendants Ward and Castellani, as set forth herein, are state action.

10.  Defendant Marlboro Central School District [hereinafter "the district"] is a municipal corporation organized pursuant to the laws of the State of New York and it may sue and be sued for constitutional torts of the sort alleged herein.  It is governed by an elected school board who hires the school superintendent who is

charged with administering the affairs of the district and implementing decisions made by the board.

## II. **JURISDICTION**

11.  As plaintiffs claim that defendants violated the substantive due process rights of themselves or their minor children, this Honorable Court has jurisdiction over this matter pursuant to 42 U.S.C. secs. 1983 and 1988 and 28 U.S.C. secs. 1331 and 1343 (3) &(4).

## III. **STATEMENT OF FACTS**

12.  Defendant school district hired defendant Ward to be its head football coach during the summer 2010.

13.  Starting with his first season and continuing through the 2012 season, defendant Ward instructed his players to intentionally and improperly injure identified opposing players.

14.  Despite the language of the Marlboro Athletic Handbook which states under "Coaching Ethics," that "the duty of all concerned with high school athletics [is to] emphasize the proper ideals of sportsmanship, ethical conduct and fair play, eliminate all possibilities which tend to destroy the best values of the game, stress the values which derive from playing the game fairly, be courteous to visiting teams and official [and ] establish a friendly relationship between visitors and

hosts," Ward instructed his players to twist and break fingers and target the knees of opposing players with the purpose of injuring them.

15.  Specifically, in both the 2011 and 2012 seasons, Ward instructed his players, in the presence of R.V., J. V., and plaintiffs West and Santora,  amongst many others, to injure Kariff Laboy of New Paltz and Josh Riley of Spackenkill, two standout opponents.

16.  J. V. also witnessed Ward target a player named "Clark" from New Paltz and a player with a knee brace from Croton-Harmon.

17.  Before the 2011 game against New Paltz, Ward told his team that he wanted the opposing team to "go out in body bags."

18.  Ward also specifically targeted Matt Forte, a player for the Highland team, saying he wanted him in "a body bag."

19.  Consistent with these directions, Ward congratulated players who struck opposing players viciously and said repeatedly, "I want to see more of that."

20.   In a fall 2012 game, Ward ran onto the field and congratulated Brandon Curry after he struck an opposing player after the play ended.

21.  Defendant Ward's conduct, as exemplified in paras. 13-19, established a tone and pattern: he was far less concerned about the well being of student/athletes, whether on his team or another, than with winning at any cost.

22.  Apprised of these directions and instructed by Ward to have younger players emulate such violent techniques, several lower level coaches stopped coaching in the Marlboro system.

23.  Apart from directing his players to use untoward violence against players from other teams, Ward intentionally perpetuated physical abuse against plaintiffs and other Marlboro High School football players in violation of Rule 27(a)(2) of the Handbook of the New York State Public High School Athletic Association which unequivocally states that no coach "shall strike, shove, kick or make other physical contact with the intent to annoy, harass or intimidate another person (e.g., official, another coach, player, fan)."

24.  Such conduct created a hostile educational/playing environment for the plaintiffs and their teammates.

25.  In June 2011, defendant Ward violently grabbed plaintiff Corcoran by the face mask, jerked his head, cursed at him and threw him off the football field.

26.  When plaintiff Corcoran asked what he had done wrong, Ward told him, "shut the fuck up and sit the fuck down."

27.  Plaintiff Corcoran witnessed like abuse directed by Ward to other players, including plaintiff West, M.B. and J.V.

28.  As a consequence of this conduct and similar conduct he saw toward other student/athletes, plaintiff Corcoran quit playing football in the summer of 2011.

29. Plaintiff Corcoran reported the abuse to which he was subjected to his parents and to district Athletic Director O'Donnell, who took no action curb the obvious excesses of defendant Ward.

30. In August 2011, plaintiff Corcoran's father, Thomas, met with the Assistant Superintendent and defendant Castellani to report his concern about the abuse to which Ward had subjected his son and other student/athletes, but defendants Castellani and the district took no action to curb defendant Ward's excesses.

31. While plaintiff Corcoran would have liked to resume playing high school football, he did not feel doing so was safe in light of the abusive conduct displayed toward both him and others by defendant Ward and the failure by the district to respond to the complaints he and his father had made to defendant Castellani.

32. An internal investigation conducted by defendant Marlboro Central School District confirmed that Ward had abused plaintiff Corcoran as related above, but defendants Castellani and district failed to discipline Ward for this behavior.

33. During the early part of the 2011 season, defendant Ward grabbed the face masks of J. V. and M.B. , jerked their necks and heads toward him and screamed at them.

34. During the football game against Lourdes in the fall of 2012, in the presence of other team members and witnessed by parents, including Alfred Votta and

School Board President Stephen Jennison, defendant Ward grabbed and jerked Ryan Cary's head by his face mask.

35. When plaintiff Alfred Votta complained about this behavior to School Board President Jennison, also an eyewitness to defendant Ward's action, Jennison told Votta that his coach had behaved in a similar manner when he was a high school football player.

36. When plaintiff Corcoran's father called him to complain about the same incident, Board President Jennison repeated the same remark as is attributed to him in para. 35 and, upon information and belief, failed to raise the issue of defendant Ward's abusive conduct with the school board or seek any disciplinary action against Ward.

37. In the fall 2012, emboldened by the defendant district and Castellani's prior failure to take any action against him for prior like and reported abuses, defendant Ward grabbed J.V. by the shoulder pads and aggressively shoved him.

38. In the fall 2012, defendant Ward forced certain players he disliked, namely K.H. and J. G., to run laps for as many as three consecutive hours without a break.

39. Defendant Ward also forced players, like J.G., to play through serious injury, such as a sprained ankle.

40. Apart from physically abusing players as exemplified above, defendant Ward verbally abused his players, calling them "pussies," yelling "stop fucking up my

world," "get your head out of your ass," "grow a set of balls" and other profanity on a regular basis.

41. Plaintiff Corcoran' father and school board member Lawrence Cavazza complained to defendant Ward about his profanity, but defendant Ward responded that he was not going to change his coaching style and stated that his team practices should be closed to the public.

42. Like complaints by parents like the Vottas and Mr. Corcoran to the Superintendent of Schools and the School Board went ignored.

43. Defendant Ward became aware that parents had made such complaints about his behavior and that defendants Castellani and the district had dismissed these complaints and taken no curative or disciplinary action against him.

44. Amongst the examples of defendant Ward's verbal abuse are the following:

a) at half-times during games, Ward would typically lose his temper, throw water bottles and white boards, kick water bottles so hard his own shoe would fly off and use ongoing profanity.

b) on one occasion, defendant Ward told a player, M.T. that if he jumped off-side one more time he would going to rip his "fucking face off."

c) In the fall 2011, when plaintiff West was a junior, defendant Ward put him in at a position on offense with which West was not familiar.  Ward stated, "Get your head out of your ass, mother fucker".

d)  Moments later, as plaintiff West was going back toward the huddle, Ward yelled at him, "I didn't fucking tell you to run that route [as he had, in fact, instructed West], now sit down and get the fuck off my field."

e)  This interaction "killed the game of football" for plaintiff West; he hated going to practice or having any contact with Ward, who was perpetually abusive in his presence -  toward him and other student/athletes.

f)  After seeking out the mother of an African-American player, T.H., so she could sign off on his son playing despite a concussion, in front of many of his players, including several plaintiffs, defendant Ward mocked Mrs. H.'s accent and then said with reference to her son, "I will run that nigger into the ground."

g)  Defendant Ward called J.V. and M. G. "candy ass mother fuckers."

h)  Defendant Ward called M. B. a "pussy" in front of other players.

i)  As Hurricane Sandy struck and at football practice, defendant Ward told plaintiff Dominic Santora to "get his fucking ass off the field" and then left him unsupervised in a parking lot, locked out of the high school and the locker room.

j)  Plaintiff Santora witnessed the physical and verbal abuse of numerous other student/athletes and the treatment Ward directed toward him frightened him, adversely affected his self-esteem and caused him to stop playing organized football at the end of the 2012 season.

k)  In the fall of 2012, defendant Ward called the female athletic director a "cunt" in the presence of J.V., then sixteen years of age.

l)  During the fall 2011, defendant Ward threw Jimmy Farrett of his "fucking" field and told him to go home because he did not have his helmet on.

m)  On other occasions, during the same season, defendant Ward verbally abused plaintiff Farrett, calling him a "pussy and "mother fucker," and instructing him, "don't fuck up my world" and "don't let your asshole pucker up."

n)  In plaintiff Farrett's presence, defendant Ward was both verbally and physically abusive to other players, repeatedly cursing, threatening players with physical violence and throwing water bottles and white boards during half-time.

o)  Such behavior caused plaintiff Farrett to feel fearful, humiliated and degraded and substantially diminished his enjoyment of his junior and senior seasons as a student/athlete.

p)  On October 12, 2012, defendant Ward screamed at J.V. so close to his face that he literally spit at and upon J.V.

q)  The same day, defendant Ward treated J.V.'s brother, R.V., similarly, spitting at him and cursing him, stating, "You're on thin ice mother fucker."

r)  Having witnessed this abuse of his sons by defendant Ward, plaintiff Alfred Votta asked Athletic Director O'Donnell to do something to protect his sons.  After the game was over, AD O'Donnell approached the Vs and told them that her heart

broke for their sons because she saw Ward abuse both of them. She related that when she was in college, she had a coach like Ward for basketball and quit the team and never played again because of the coach. She assured the Vs that she would talk with Ward on Monday morning. But, though his superior and authorized by dint of her position to supervise the football coach, she failed to take any effectual action against defendant Ward.

s) Following this incident, on Monday, October 15, 2012, Kerstin Votta called the School Superintendent and made an appointment to see him. When she arrived for the meeting, defendant Castellani's secretary told her that he was in another meeting and she would have to re-schedule. Mrs. Votta refused to leave and eventually met with defendant Castellani who advised her that, for every one parent who complained about Ward, ten parents provided positive feedback. Mrs. Votta explained that Ward had told her son Ralph, "you're on thin ice mother fucker." Defendant Castellani replied that while this was a fireable offense, it was not enough to cause him to take any action. Mrs. Votta complained about the verbal abuse to which Ward had subjected her sons. Defendant Castellani replied that if Mrs. Votta went to any high school football game, she would see similar yelling. Mrs. Votta advocated for the removal of the football coach, but the Superintendent told her this demand was unrealistic.

t)  In the fall 2012, in front of other players, defendant Ward called Larry Cavazza, the Vs' uncle, a "worm," while he attempted to fix the stadium lights.

u)  In front of other players, including several of the plaintiffs, defendant Ward constantly ridiculed M.B. for his weight.

v)  Defendant Ward cursed out R.S. for leaving weight-lifting for a family commitment and then, calling him a "pussy," kicked off the football team because of conflicts with another sport.

w)  Defendant Ward told J.G. that he was really "not a part of the team" after J.G. attended every practice.  Defendant Ward made J.G. serve as a water boy for two days at practice, attempting to humiliate him.  When J.G.'s parents complained, defendant Ward told them that he had decided to make their son "an example."

x)  The student/athletes subjected to the abuse related above shared their experiences with their teammates including, when applicable, the plaintiffs.

43.  Aware that defendant Ward continued to engage in the same abusive conduct and that the responsible adults, including defendants Castellani and those in charge of defendant district have taken no action to curb his excesses caused the plaintiffs to become dispirited and frustrated.

44.  On the basis of this abuse, which was either directed at them or to other football players in their presence, J.V.,  R.V., plaintiffs West and Corcoran, quit

the football team, losing friendships and the opportunity to obtain football scholarships to college.

45.  Despite numerous complaints made by plaintiffs, other parents and their counsel, the defendant district has failed to take any meaningful action to curb the physical and verbal abuse engaged in by defendant Ward and this failure has made it possible for him to continue said abusive conduct.

46.  In August 2011, plaintiff Corcoran's father met with the Athletic Director, the Superintendent of Schools and defendant Ward to complain about the treatment Ward had directed toward his son.

47.  Following the meeting, neither defendant Castellani nor the school district took any remedial or curative action.

48.  After the 2012 football season ended, plaintiffs Vs again complained to AD O'Donnell about Ward's treatment of her sons.

49.  AD O'Donnell invited J.V. and R.V. to her office and, there, they wrote a letter outlining their concerns.

50.  After the students did write and submit this letter, they heard nothing from the district or defendants Castellani or Ward.

51.  On January 28, 2013, plaintiffs' counsel wrote the school district, Castellani, O'Donnell and Ward and complained about the physical and verbal abuse to which defendant Ward had subjected players on his team, including the plaintiffs.

52.  Defendants failed to respond to the Sussman letter or other notice letters he wrote them.

53.  On February 7, 2013, Mrs. V. sent an email complaining about Ward to the athletic director.

54.  Eleven days later, Ward sent an email to all members of the football team, excluding the V family, indicating that one family associated with the team had requested his resignation and disclaiming any responsibility for physically and verbally abusive conduct and, instead, claiming that s group of parents had fabricated stories about him and boasting that he would continue as head football coach.

55.  In early March 2013, the Vs told an investigator appointed by the school district most of the afore-cited allegations concerning the abuse suffered by their sons and other students/athletes.

56.  On March 18, 2013, the school district released an internal investigation which claimed that the charges of harassment were unfounded.  While conceding that defendant Ward used profanity, the report concluded that his behavior did not rise to the level of harassment.

57.  Despite the numerous reports of abuse and the abuse witnessed by district administrators or school board members themselves, defendants Castellani and the

school district re-appointed Ward as head football coach for the 2013 football season.

58.  Such re-appointment signaled defendant Ward that his abusive behavior was condoned and permitted, denoting district custom and practice.

59.  Said re-appointment also caused plaintiffs R.V., J.V. and other players not to participate in football and caused them to thereby disqualify themselves for consideration for scholarships for which they likely would have qualified had they participated.

60.  The substantial abuse engaged in by defendant Ward and approved and thereby condoned and facilitated by defendants Castellani and district caused each plaintiff substantial mental suffering, humiliation and emotional anguish.

61.  The conduct of defendant Ward was knowingly malicious and his letter to the football community of February 2013 was malicious and false, attempting to blame others for his out-of-control behavior and to further isolate student/athletes, including the plaintiffs, and their families who tried to put an end to his abusive and unprofessional behavior.

62.  Defendant Castellani had full knowledge of the abusive conduct of Ward and a duty to dismiss him as head football coach so as to protect the health and safety,

physical and mental, of students under his care and custody.  He failed to do so for no good reason.

63.  Defendant district, acting through its elected School Board, has full knowledge of defendant Ward's abusive conduct and failed to dismiss him as head football coach.  It had no good reason for its condonation and facilitation of his abuses.

64.  By failing to discipline Ward despite the express conclusions of its Athletic Director and Superintendent that his behavior crossed the line and by, instead, re-appointing defendant Ward annually as head football coach despite repetitive instances of reprehensible conduct which shocks the judicial conscience and have destroyed plaintiffs' enjoyment of the sport of football and diminished their opportunities for scholarships allowing them to forward their post-secondary educations, defendant district adopted a policy, practice and custom of condoning and facilitating such conscience-shocking behavior.

## IV.  **CAUSES OF ACTION**

65.  Plaintiffs incorporate paras. 1-64, as if fully re-written herein.

66.  By engaging in assault and battery against R.V.in a manner which shocks the judicial conscience, defendant Ward violated R.V.s right to due process as provided by the Fourteenth Amendment, made actionable through 42 U.S.C. sec.

1983.

67.  By engaging in assault and battery against plaintiff Corcoran in a manner

which shocks the judicial conscience, defendant Ward violated his right to due

process as provided by the Fourteenth Amendment, made actionable through 42

U.S.C. sec. 1983.

68.  By engaging in assault and battery against J.V.in a manner which shocks

the judicial conscience, defendant Ward violated J.V.s right to due process as

provided by the Fourteenth Amendment, made actionable through 42 U.S.C. sec.

1983.

69.  By engaging in assault and battery against plaintiff Santora in a manner

which shocks the judicial conscience, defendant Ward violated his right to due

process as provided by the Fourteenth Amendment, made actionable through 42

U.S.C. sec. 1983.

70.  By engaging in assault and battery against West in a manner which shocks

the judicial conscience, defendant Ward violated his right to due process as

provided by the Fourteenth Amendment, made actionable through 42 U.S.C. sec.

1983.

71.   By engaging in assault and battery against plaintiff Farrett in a manner which

shocks the judicial conscience, defendant Ward violated his right to due process as

provided by the Fourteenth Amendment, made actionable through 42 U.S.C. sec.

1983.

72.  By failing to take curative actions against defendant Ward and by

affirmatively supporting him despite knowledge of his conduct and the

authority to terminate him as football coach , defendant Castellani violated the

substantive due process rights of each of the plaintiffs as provided by the due

process clause of the Fourteenth Amendment as made actionable by and through

42 U.S.C. sec. 1983.

73.  By failing to take curative actions against defendant Ward and by

affirmatively supporting him despite knowledge of his conduct and the

authority to terminate him as football coach , defendant district violated the

substantive due process rights of each of the plaintiffs, as provided by the due

process clause of the Fourteenth Amendment as made actionable by and through 42 U.S.C. sec. 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that this Honorable Court:

a) accept jurisdiction over this matter and empanel a jury to hear and decide those issues within its jurisdiction;

b) award to plaintiffs compensatory and punitive damages against defendant Ward;

c) award to plaintiffs compensatory and punitive damages against defendant Castellani;

d) award to plaintiffs compensatory damages against defendant district;

e) acting in equity, order defendant district to terminate defendant Ward from his position as head coach of the Marlboro High School football team;

f) require defendants, their successors, agents, employs and those acting in concert with them to implement and enforce accepted codes of conduct on the part of coaches or others having contact with students;

g) award plaintiffs the reasonable attorneys fees and costs deriving from this

lawsuit, and

h) enter any other relief the interests of law and equity require.

Respectfully submitted,

MICHAEL H. SUSSMAN [103324]

SUSSMAN & WATKINS
PO BOX 1005
1 RAILROAD AVENUE, SUITE 3
GOSHEN, NY 10924
(845)-294-3991

Counsel for Plaintiffs

Dated:  12/3/13